IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| L-3 COMMUNICATIONS INTEGRATED SYSTEMS, L.P.,<br><br>　　　Plaintiff,<br><br>v.<br><br>CITY OF GREENVILLE, TEXAS,<br><br>　　　Defendant. | CIVIL ACTION NO.<br>3:11-CV-2294-P |

## MEMORANDUM OPINION AND ORDER

Now before the Court are (1) Defendant's motion to dismiss and motion to stay deadlines (Docket #8); (2) Plaintiff's motion for partial summary judgment (Docket #11); and (3) Defendant's motion to stay case or motion for a continuance of Plaintiff's summary judgment motion (Docket #15). After careful consideration of the Parties' motions and the applicable law, the Court hereby GRANTS Defendant's motion to dismiss (Docket #8).

## FACTS

After World War II, the United States government transferred Majors Field in Greenville, Texas (the "Airport Property") to the City of Greenville to be used as a public airport. (Docket #13-3 at 21.) Plaintiff L-3 is a defense contractor that operates an aircraft maintenance and modification facility, primarily for various branches of the United States Armed Forces. (Docket #13-2 at 13.) In 1951, Plaintiff L-3's predecessor entered into an agreement with the City of Greenville (the "City" or "Defendant") to lease part of the Airport Property. (Docket #13-5 at 31, 57.) Since 1951, the Airport Property has served both as a public, municipal airport for the City and as an operations

1

location for L-3. (Docket #13-3 at 14.)

In January 2011, L-3 filed a state court lawsuit against the City and some of its officials alleging breach of their lease agreement and other state law claims. The defendants challenged the court's jurisdiction to hear the case and the court denied the motion. The defendants filed an interlocutory appeal of that ruling (which remains pending). At this time, the state court action is stayed pending the appeals court's ruling.

During discovery in the state court lawsuit, L-3 served the City of Greenville with over 100 requests for admissions. In its discovery request, L-3 asked the City to admit that the federal Surplus Property Act applied to the Airport Property. (Docket #13 at 181.) The defendants objected to the request for admission as irrelevant and vague. They also denied the request. (*Id.*) L-3 also asked the defendants to admit that under the Surplus Property Act, aircraft owned by the United States government have a right to land on the Airport Property's runway. (Docket #13-13 at 182-83.) Again, the defendants objected to the discovery request as irrelevant and vague. They also denied the request for admission. (*Id.*)

In May 2011, L-3 sent a letter to the defendants, pointing out that the defendants' denials are contrary to a document signed by the City and produced during discovery that certifies that the Surplus Property Act does apply to the Airport Property. (Docket #13-18 at 281.) Apparently, the defendants did not respond to this letter.

While the state court action was stayed pending appeal of the jurisdictional issue, L-3 filed this federal declaratory judgment action, seeking a declaration that (1) the Airport Property is subject to the federal Surplus Property Act; (2) the Airport Property must be used indefinitely as a public use airport; (3) the City must allow itinerant aircraft owned by the United States government to use the

2

Airport Property; and (4) all revenues from the Airport Property must be used for the operation and improvement of the Airport Property. Plaintiff also request that the Court order an accounting of the City's airport revenue and airport fund. (Docket #1 at 14.)

The City filed a motion to dismiss this case based on lack of subject-matter jurisdiction and on equitable grounds. Contemporaneously, L-3 filed a motion for partial summary judgment on its declaratory judgment claims. The City has also moved to stay the deadlines in this case pending the Court's ruling on the motion to dismiss.

## DISCUSSION

It is well-established that the Declaratory Judgment Act, 28 U.S.C. § 2201 does not create a substantive cause of action. *Collin Co. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170 (5th Cir. 1990). Likewise, "the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

The City argues L-3's claims should be dismissed for lack of subject matter jurisdiction because L-3 has no substantive right of action under federal law. Specifically, the City contends the statutes that form the basis for L-3's declaratory action and accounting claims do not provide for a private right of action.

### A.   The Airport and Airway Improvement Act ("AAIA").

The Airport and Airway Improvement Act ("AAIA"), which is part of the Federal Aviation Act ("FAA"), 49 U.S.C. § 40101 *et seq*, created a program called the Airport Improvement Program ("AIP"), which is a grant-in-aid program that provides funding for public airports such as Majors Field. The purpose of the AIP is to assist in the maintenance of a safe and efficient nationwide

3

system of public-use airports. 49 U.S.C. §47107. In return for federal grant monies under the AIP, the airport sponsor is required to make certain grant assurances to the FAA about airport operations. 49 U.S.C. § 47107.

L-3's claim for an accounting is based on the AAIA and its regulations. (Docket #1 at 12-13.) L-3 also seeks a declaration based on Grant Assurance 25 that "D. All revenues from the Airport Property (excluding ad valorem taxes) must be used for the operation and improvement of the Airport Property." (Docket #1 at 12.)

The U.S. Secretary of Transportation, acting through the FAA, administers the AIP, promulgates regulations under the AAAIA and enforces grant assurances under the AIP. 49 U.S.C. §§ 40103, 47107; 14 C.F.R. § 1.1 *et seq.* The FAA has established a comprehensive dispute resolution procedure for persons affected by alleged non-compliance with a grant assurance. 14 C.F.R. §§ 16.21, 16.23. Claimants may seek a remedy from the FAA by filing a formal complaint with the FAA administrator, but only after certifying that "substantial and reasonable good faith efforts to resolve the disputed matter informally . . . have been made and that there appears to be no reasonable prospect for timely resolution of the dispute. 14 C.F.R. §§ 16.21(b), 16.23(a). L-3 has not presented any evidence that it engaged in this informal dispute resolution process with the City or that it filed a formal complaint with the FCC.

The regulations provide that once a formal complaint is filed, the FAA may conduct an investigation of the complaint, which may include auditing the airport's financial records. 14 C.F.R. 16.29(b)(3). After the investigation, the FAA will render a determination whether the airport sponsor is complying with the grant assurance and if not, the FAA issues a compliance order that may terminate the sponsor's eligibility for grants, suspend the payment of grant funds, or require the

4

airport sponsor to cease and desist activity. 16 C.F.R. §§ 16.31, 16.33, 16.109, 16.241.

The AAIA regulations do not provide for a private right of action and therefore cannot serve as an independent basis for jurisdiction. Congress and the FAA intended for claimants to pursue their claims through the administrative enforcement process, not through the courts. (*See* Docket #8 at 15 (providing string cite of cases from various jurisdictions).)

### B.  The Surplus Property Act.

L-3 asserts in its claim for declaratory relief that "[T]he City refuses to admit or otherwise recognize that the Airport Property is subject to the Surplus Property Act and the restrictions of the 1947 Agreement." (Docket #1 at 12.)

The Surplus Property Act, 49 U.S.C. §§ 47151-47153, is part of the Federal Aviation Act. It sets forth certain limitations on the use of airport property that has been conveyed by the federal government to a city. Like the AAIA, the Surplus Property Act grants exclusive regulatory and enforcement authority to the U.S. Secretary of Transportation, acting through the FAA. 49 U.S.C. §§47151(a), (b). Subsection (b) provides "[o]nly the Secretary [of Transportation] may ensure compliance with an instrument conveying an interest in surplus property. . ." *Id.* §47151(b). The statute does not contain any provision for a private of action under the Act. The Court concludes no such private right of action exists and therefore, jurisdiction may not be invoked on this basis.

### C.  Other Bases for Federal Subject-Matter Jurisdiction.

L-3 responds by arguing that these conclusions do not end the inquiry. L-3 maintains jurisdiction does exist because "the Court will need to construct and interpret a federal statute (namely, the Surplus Property Act)." (Docket #18 at 15.) The case L-3 relies on for this principle, *Drawhorn v. Qwest Comm'ns Int'l, Inc.*, 121 F. Supp.2d 554 (E.D. Tex. 2000), is distinguishable

from this case. First, *Drawhorn* involves a removal case in which the plaintiff couched his federal claims as state law claims. The court invoked the legal principle that federal jurisdiction exists when a state law claim involves a substantial federal issue and utilized the "artful pleading doctrine" to look beyond the face of the plaintiff's complaint to determine whether a federal question had been raised. *Id.* at 559. Here, Plaintiff has not asserted an actual claim for relief - this is a declaratory judgment action. The artful pleading doctrine and the reasoning of *Drawhorn* is simply inapposite here.

L-3 also relies on *West 14th Street Commercial Corp. v. 5th West 14th Owners Corp.* for the principle that federal jurisdiction exists when a state cause of action poses a substantial federal question. 815 F.2d 188, 192 (2d Cir. 1987). Again, this principle cannot be applied to the instant case because this case does not involve a state law cause of action.

"[N]ot every case or cause of action that knocks on the federal courthouse door gains entrance. To determine whether the court has federal question jurisdiction to decide the case, the complaint must contain either a federal cause of action or a state cause of action embodying a substantial federal question." *West 14th Street Commercial Corp. v. 5th West 14th Owners Corp.*, 815 F.2d 188, 192 (2d Cir. 1987). An action for a declaratory judgment will invoke federal question jurisdiction only if the coercive action that would have been brought (were declaratory judgment not available) would have been within that jurisdiction. *West 14th Street*, 815 F.2d at 194; Wright & Miller, 13D Federal Practice & Procedure §§3566, 2767 (3d ed. 2012). In other words, federal question jurisdiction exists in a declaratory judgment action if the plaintiff could have sued in federal court for coercive relief. *Id.* This brings us full circle – Plaintiff cannot sue in federal court based on alleged violations of the grant assurances or the Surplus Act because no federal cause of action

6

exists under those statutes.

For these reasons, the Court hereby GRANTS the City's Motion to Dismiss (Docket #8). The City's Motion to Stay All Deadlines is hereby DENIED as MOOT (Docket #8). Plaintiff's motion for partial summary judgment is hereby DENIED as MOOT (Docket #11.). Defendant's motion to stay case or motion for a continuance of Plaintiff's summary judgment motion is hereby DENIED as MOOT. (Docket #15.). Plaintiff's case is hereby DISMISSED with prejudice in its entirety.

SO ORDERED, this 5th day of September 2012.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE